# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE WINDWARD GROUP, LLC** | **CIVIL ACTION** |
| **VERSUS** | **No. 17-5748** |
| **REVA SOLUTIONS, INC.** | **SECTION I** |

## ORDER & REASONS

Before the Court is a motion for partial summary judgment filed by defendant Reva Solutions, Inc. ("Reva") regarding the ability of plaintiff The Windward Group, LLC ("Windward") to recover damages for lost profits. For the following reasons, the motion is denied.

## I.

In June 2015, Windward entered into a contract with Murphy USA, Inc. ("Murphy USA") to provide support services for Murphy's content management program. In connection with its Murphy USA contract, Windward hired Reva as a subcontractor to provide technical assistance.

Pursuant to its agreement with Windward, Reva submitted invoices to Windward for the work it performed. As the project progressed, Murphy USA allegedly began to question the amounts associated with several invoices submitted by Reva. Murphy USA ultimately canceled its contract with Windward.

Windward then brought the present lawsuit against Reva alleging breach of contract, tortious interference with business relations, negligence, detrimental reliance, and violations of the Louisiana Unfair Trade Practices Act ("LUTPA").

Windward asserts that Reva overcharged for services it performed and billed for work not actually performed on the Murphy USA project, thereby leading Murphy USA to cancel its contract with Windward.

Windward contends that, as a result of Reva's conduct, it incurred a variety of damages, including lost profits. Reva now moves for partial summary judgment on the ground that recovery for lost profits is precluded by the contract in place between itself and Windward. Windward opposes the motion.

**II.**

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some

metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . ., the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical and Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (quotation omitted).

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

### III.

In 2015 Murphy USA issued a request for proposals, seeking bids for document management and business consulting services.[1] In anticipation of submitting a proposal to Murphy USA, Windward and Reva entered into a "teaming agreement."[2] The agreement reflected the parties desire to "combine their efforts to respond to

---

[1] *See* R. Doc. No. 29-2.
[2] *Id.*

3

[Murphy USA's request] and further to enter into an agreement under which the parties will perform services pursuant to any contract awarded by Murphy USA."[3]

In support of its motion for summary judgment, Reva relies exclusively on a provision of the teaming agreement, which provides:

> In no event shall either party, its affiliates, agents or subcontractors, or any of their partners, principals or other personnel be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses or losses (including, without limitation, lost profits and opportunity costs), nor shall they be liable for any claim or demand against the other by any third party. The provisions of this [paragraph] shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort (including, without limitation, negligence) or otherwise.[4]

Reva insists that the teaming agreement was its only contract with Windward and, therefore, it governed the relationship between the parties with respect to the work ultimately performed for Murphy USA.[5] Therefore, Reva contends, Windward is barred from recovering damages for lost profits under the terms of the teaming agreement.

Windward does not dispute that it entered into the teaming agreement with Reva or that the teaming agreement included the aforementioned provision regarding lost profits. Rather, Windward argues that the teaming agreement "was merely a

---

[3] *Id.*
[4] *Id.* ¶ 15.
[5] Reva cites deposition testimony in which a Windward representative indicates that the teaming agreement was executed by a Windward employee; that Windward "operated under" it; and that he was unaware of any other written agreements between the parties.

4

preliminary contract, or letter of intent, meant to govern the terms upon which Windward was to submit a proposal to [Murphy USA]."[6] In Windward's view, the teaming agreement "pertained only to the submittal of Windward's proposal to [Murphy USA]" and did not relate to the work performed by the parties on the Murphy USA project.[7]

Several provisions of the teaming agreement support Windward's argument. For example, the first paragraph of the agreement states:

> "The sole purpose of this Agreement is to submit a proposal to [Murphy USA] in response to the [r]equest . . . and to receive a contract award from [Murphy USA] and to enter into an agreement with [Murphy USA] . . . and, in turn, to have [Windward] enter into a contract with [Reva] to provide a portion of those [s]ervices . . . *This agreement relates only to the [p]roposal.*"[8]

The agreement later contemplates that, if Murphy USA were to accept the Windward and Reva bid, they would then negotiate a separate contract. Specifically, the agreement reads: "In the event of the [contract] award to [Windward], the [p]arties will make every reasonable effort to negotiate a [s]ubcontract [a]greement."[9] Hence, Windward maintains that "[i]t was never either party's intention for the [t]eaming [a]greement to apply to anything other than Windward's initial proposal."[10]

The Court concludes that Windward has identified a genuine dispute of material fact—namely, whether the teaming agreement, which seemingly precludes

---

[6] R. Doc. No. 29, at 4.
[7] *Id.* at 5.
[8] R. Doc. No. 29-2 ¶ 1 (emphasis added).
[9] *Id.* ¶ 11.
[10] R. Doc. No. 29, at 6.

5

recovery of lost profits, governed the contractual relationship between Windward and Reva with respect to all work completed for Murphy USA or only as it related to the submission of Windward's proposal to Murphy USA. On the one hand, the teaming agreement can be read to bar recovery for lost profits only in the event that one of the parties were to breach the teaming agreement itself. For example, if Windward or Reva were to have failed to meets its obligations under the agreement causing Murphy USA to accept another bid, the other party would not be able to recover any resulting lost profits. On the other hand, the parties conceivably could have meant for the lost profits provision to apply to the entirety of their relationship. In the Court's view, the question of the parties' intent when entering into the teaming agreement is one better left to the trier of fact. Summary judgment is, therefore, inappropriate.[11]

Accordingly,

**IT IS ORDERED** that Reva's motion for partial summary judgment is **DENIED**.

New Orleans, Louisiana, December 13, 2017

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[11] Because the Court determines that a genuine dispute of material fact has been presented with regard to the scope of the teaming agreement, it need not address Windward's arguments regarding Louisiana Civil Code Article 2004 or the general recoverability of lost profits in tort claims. Nor must the Court consider Reva's argument concerning contract modification, as "[a]rguments raised for the first time in a reply brief are generally waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).